Gerald R. MOUTON, Jr.,
Plaintiff-Appellee,

v.

TUG "IRONWORKER" her equipment,
tackle, apparel, etc., et al.,
Defendants,

John F. Beasley Construction Company,
et al., Defendants-Appellants.

No. 86–3454.
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 10, 1987.

---

WORKER maneuvered within three to five feet of the pier and Mouton jumped ashore, injuring his knee in the process. At the time of Mouton's injury, the IRONWORK-ER did not provide a gangway for those employees who were disembarking onto the pier. Mouton argues that Beasley negligently caused the injury to his left knee by forcing him to jump from the vessel to the pier.

Mouton sued Beasley and its insurer, the National Union Fire Insurance Company, under the Jones Act and general maritime law, and the case was tried to a jury. At the close of the evidence, the district court granted Mouton's motion for a directed verdict on the issue of seaman status, holding that Beasley's 150–ton derrick barge was a vessel and that Mouton was a Jones Act seaman. The jury returned a verdict of $175,000 for Mouton which was reduced to $148,750 because Mouton was found to be fifteen percent (15%) comparatively negligent.

Mark J. Spansel, Brian J. Miles, Adams & Reese, New Orleans, La., Manfred W. Leckszas, Ober, Kaler, Grimes & Shriver, Baltimore, Md., for defendants-appellants.

Stephen P. Bruno, Bruno & Bruno, New Orleans, La., for plaintiff-appellee.

Before REAVLEY, JOHNSON and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Gerald R. Mouton, Jr., injured his left knee while employed by the John F. Beasley Construction Company (Beasley) as an oiler on a 150–ton derrick barge, owned and operated by Beasley. Beasley used the derrick barge to transport men and materials across the Mississippi River during the construction of a new bridge in New Orleans. Beasley and its insurer, the National Union Fire Insurance Company, appeal a jury verdict of $175,000 in damages awarded to Mouton because of Beasley's negligence. We affirm.

Beasley and its insurer now appeal raising four issues: (1) that the district court erred in directing a verdict on seaman status; (2) that the district court erred in failing to grant a new trial because of the impermissible introduction of evidence of subsequent remedial measures; (3) that the district court erred in failing to grant a new trial because of plaintiff's improper statements during closing argument; and (4) that the jury verdict of $175,000 is excessive and is subject to remittitur.

## I.

Mouton injured his left knee while disembarking from the Tug M/V IRON-WORKER, a vessel used to transport personnel from the derrick barge to the east and west banks of the Mississippi. Mouton was instructed by Beasley's derrick operator to travel ashore on the IRONWORKER to purchase and deliver lunch. The IRON-

## II.

██ Beasley[1] first argues that the district court erred by directing a verdict in Mouton's favor on the issue of seaman status. Beasley contends that the derrick barge was not a vessel and that Mouton was therefore not a seaman. We disagree. The undisputed facts were sufficient to permit the district court to conclude as a matter of law that the derrick barge was a vessel. The derrick barge was used to transport men and materials across the

1. For the sake of simplicity, we will refer to    both Beasley and its insurer as "Beasley."

Mississippi River five to eight times per day. The derrick barge was capable of movement under its own power and only required tug assistance when the Mississippi River was at high levels. The district court followed clear circuit authority in determining as a matter of law that the derrick barge was a vessel and Mouton was a seaman. *Davis v. Hill Engineering, Inc.,* 549 F.2d 314, 326–28 (5th Cir.1977). *See also Producers Drilling Co. v. Gray,* 361 F.2d 432, 437 (5th Cir.1966).

## III.

Beasley next argues that the district court erred by denying its motion for a new trial based on the improper introduction of evidence of subsequent remedial measures. Fed.R.Evid. 407. Beasley placed a gangway aboard the IRONWORKER after Mouton's accident. The District Court granted Beasley's motion in limine to exclude any evidence of this subsequent remedial measure. Despite this pretrial order, the issue of subsequent remedial measures was raised three times during the trial.

In the first instance, Mouton asked the captain of the IRONWORKER on direct examination: "Are you saying that you never used a board as a gangway on the bow of the IRONWORKER for precisely this reason to transfer men from the bow of the IRONWORKER onto this pier?" The court sustained Beasley's objection to the question. The second instance involved a direct violation of the motion in limine when Mouton asked the captain on redirect: "Isn't it a fact that the day following Mr. Mouton's injury, you employed the use of a gangway from the vessel to the pier?" The court sustained Beasley's objection to the question and instructed the jury to disregard the question. From the trial transcript it appears that Mouton believed that a previous question by Beasley to the captain opened the door to this question about subsequent remedial measures. Finally, when asked whether a gangway was available at the time of Mouton's injury, a deckhand on the IRONWORKER volunteered the fact that a gangway was not used until after Mouton's injury. Beasley failed to ask for a limiting instruction for this unsolicited remark.

The district court did not abuse its discretion in concluding that the introduction of subsequent remedial measures as described above did not justify the granting of Beasley's motion for a new trial. Only the second instance involved a direct violation of the motion in limine, and the district court promptly instructed the jury to disregard the reference. We conclude that under the facts of this case the trial court's instruction to disregard the objectionable matter was sufficient to cure any error. *See Lacaze v. Olendorff,* 526 F.2d 1213, 1222 (5th Cir.1976). Although the problem may have been exacerbated by the witness who volunteered evidence of the use of a gangway after Mouton's accident, Beasley failed to move to strike his testimony. The district court did not abuse its discretion in determining that Beasley received a fair trial, and we therefore cannot say that the district court's denial of Beasley's motion for new trial was in error.

## IV.

Beasley next argues that the trial court erred in denying its motion for new trial based upon Mouton's comments during closing argument. In the rebuttal portion of closing argument, Mouton described Beasley as a "million dollar corporation" and noted that Beasley hired an expert economist and failed to call him as a witness. Beasley objected to the latter comment but not the former. The court sustained the objection and instructed the jury to disregard Mouton's remark about Beasley's failure to call its expert economist to the stand.

Trial judges are given broad discretion in deciding a motion for new trial based upon remarks during closing argument and will be overturned only for abuse of discretion. *J.T. Gibbens, Inc. v. Crawford Fitting Co.,* 704 F.2d 787, 799 (5th Cir.1983). We find no abuse of discretion in the instant case.

## V.

Beasley finally argues that Mouton's award is excessive and is subject to remittitur. We disagree. A jury award should not be disturbed unless it is so large that it "shocks the judicial conscience" or indicates "bias, passion, prejudice, corruption, or other improper motive." *Allen v. Seacoast Products, Inc.*, 623 F.2d 355, 364 (5th Cir.1980).

The jury's award of $175,000 to Mouton is supported by the evidence. Dr. Raymond Horn, an orthopedic surgeon, testified that Mouton sustained a large bucket handle tear of the medial meniscus following his November 30, 1983 accident. Mouton was complaining of pain and swelling in the left knee joint when Dr. Horn examined him on December 2, 1983. On December 9, 1983, Dr. Horn surgically repaired the meniscus tear in Mouton's knee. Dr. Horn testified that he tried to use orthoscopic instruments, but was forced to make a small incision to repair the knee. After surgery, Dr. Horn reexamined Mouton and determined that he had a five to ten percent permanent anatomical disability and impairment to the left leg, depending upon the extent of any post-operative arthritic pain.

Dr. Bruce Razza, an orthopedic surgeon, examined Mouton in February and March of 1985, and again in January of 1986. Mouton was suffering from mild post traumatic arthritis at the time, and Dr. Razza evaluated his anatomical disability or impairment rate of the left leg as approximately ten percent. Dr. Razza also predicted that Mouton would suffer from intermittent pain for the foreseeable future.

Dr. Melville Wolfson, Mouton's forensic economist, testified that Mouton sustained a loss of $31,223 in lost wages from the date of the accident on November 30, 1983, to the date of the trial on April 21, 1986. The economist also testified that it would require an award of $344,961 to compensate Mouton for the lost future earnings caused by the injury to his left knee. The economist's testimony was based on a comparison between Mouton's earning capacity as an oiler, approximately $25,000 per year, and Mouton's earning capacity as a clerical worker, approximately $12,000 per year.

Based on the medical testimony of Drs. Razza and Horn and Mouton's own testimony that he suffered periodic pain from the injury to his left knee, the jury award of $175,000 is amply supported by the evidence. The medical testimony supported Mouton's contention that he was not able to work as an oiler without significant pain. The jury was entitled to conclude that Mouton was required to leave his employment as an oiler and seek less strenuous employment at reduced wages. In light of the testimony that Mouton suffered a $376,184 economic loss in total earnings because he was forced to leave his job as an oiler to be a clerical worker, we cannot say that the jury award of $175,000 shocks the judicial conscience. The judgment of the district court is therefore

AFFIRMED.