923 F.2d 1142
 19 Fed.R.Serv.3d 251, 33 Fed. R. Evid. Serv. 141
 Bobby R. SANFORD, Plaintiff-Appellant Cross-Appellee,
v.
JOHNS-MANVILLE SALES CORP., et al., Defendants,
Armstrong World Industries, Inc., Celotex Corp.,
Eagle-Picher Industries, Inc., Gaf Corp., Owens-Corning
Fiberglas Corp., Owens-Illinois, Inc., and Pittsburgh
Corning Corp., Defendants-Appellees Cross-Appellants.
Gerald L. BURKE, Plaintiff-Appellant Cross-Appellee,
v.
JOHNS-MANVILLE SALES CORP., et al., Defendants,
Fibreboard Corp., Armstrong World Industries, Inc., Celotex
Corp., Eagle-Picher Industries, Inc., and
Pittsburgh Corning Corp.,
Defendants-Appellees Cross-Appellants.
Joe B. NICHOLS, Plaintiff-Appellant Cross-Appellee,
v.
JOHNS-MANVILLE SALES CORP., et al., Defendants,
Fibreboard Corp., Armstrong World Industries, Inc., Celotex
Corp., Eagle-Picher Industries, Inc., Pittsburgh
Corning Corp., and GAF Corp.,
Defendants-Appellees Cross-Appellants.
Robert E. WADE, Plaintiff-Appellant Cross-Appellee,
v.
JOHNS-MANVILLE SALES CORP., et al., Defendants,
Fibreboard Corp., Armstrong World Industries, Inc., Celotex
Corp., Eagle-Picher Industries, Inc., Owens-Corning
Fiberglas Corp., Owens-Illinois, Inc., and Pittsburgh
Corning Corp., Defendants-Appellees Cross-Appellants.
Louis LOYD and wife, Jo Ann Loyd, Plaintiffs-Appellants,
v.
JOHNS-MANVILLE SALES CORP., et al., Defendants-Appellees.
 89-6130 to 89-6133 and 90-2128.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 15, 1991.
Rehearing Denied March 21, 1991.
 
 1
 Robert E. Ballard, Abraham, Nichols, Ballard, Onstad & Friend, Lawrence Madeksho, Houston, Tex., for plaintiffs-appellants cross-appellees.
 
 
 2
 R. Lyn Stevens, George A. Weller, Weller, Wheelus & Green, Beaumont, Tex., for Fibreboard Corp.
 
 
 3
 Elizabeth M. Thompson, Donald J. Verplancken, Butler & Binion, Houston, Tex., for Celotex Corp. in No. 89-6130.
 
 
 4
 Bruce B. Kemp, Ronald E. Cook, Mayor, Day & Caldwell, Houston, Tex., for Pittsburgh Corning.
 
 
 5
 John H. Boswell, Boswell & Hallmark, Houston, Tex., for Armstrong World.
 
 
 6
 Samuel E. Stubbs, Fulbright & Jaworski, Houston, Tex., for Owens Corning.
 
 
 7
 George T. Shipley, Richard L. Josephson, Baker & Botts, Houston, Tex., for Owens-Illinois.
 
 
 8
 Andrew T. McKinney, Bean & Manning, Houston, Tex., for Eagle-Picher and Unarco.
 
 
 9
 James W. Mehaffy, Mehaffy, Weber, Keith & Gonsoulin, Beaumont, Tex., for Standard Insulations.
 
 
 10
 Kevin J. Cook, Gary Elliston, Dehay & Blanchard, Dallas, Tex., for Armstrong World and GAF Corp.
 
 
 11
 David Eric Bernsen, Benckenstein, Norvell, Bernsen & Nathan, Beaumont, Tex., for Celotex Corp. in Nos. 89-6131, 89-3132, 89-3133 and 90-2128.
 
 
 12
 F. Walter Conrad, Baker & Botts, Houston, Tex., for Ruberoid.
 
 
 13
 Samuel E. Stubbs, Fulbright & Jaworski, Houston, Tex., Kevin J. Keith, Bailey & Williams, Dallas, Tex., for Owens Corning in No. 89-6131, 89-3132 and 89-3133.
 
 
 14
 Raymond T. Matthews, Tekell, Book & Matthews, Houston, Tex., for A C & S, Inc.
 
 
 15
 John H. Boswell, Boswell & Hallmark, Houston, Tex., Kevin Cook, Gary Elliston, Dallas Tex., for Armstrong in No. 89-3133.
 
 
 16
 Elizabeth Thompson, Butler, Binion, Rice, Cook & Knapp, Houston, Tex., for Raybestos-Manhattan.
 
 
 17
 Ervin A. Apffel, McLeod, Alexander, Powell & Apffel, Galveston, Tex., for Johns-Manville Sales Corp.
 
 
 18
 Appeals from the United States District Court for the Southern District of Texas.
 
 
 19
 Before GARWOOD and WIENER, Circuit Judges and VELA[1], District Judge.
 
 FILEMON B. VELA, District Judge:
 
 20
 Ninety-two asbestos cases were consolidated for trial. In order to streamline things, the trial was divided into three distinct phases, the first two phases using the same jury. On appeal[2], plaintiffs primarily complain of the mode of the trial. Finding error was not preserved on this point, we reject their complaint. Because no reversible error was committed during the trial we affirm the judgment in all respects.
 
 THE TRIAL
 
 21
 The district judge consolidated 92 asbestos cases for trial on the liability issues. After the conclusion of the evidence in the first phase of the trial, the jury found that the defendants' products were defective and that defendants were grossly negligent. Since the jury returned a finding of gross negligence, the court gave the parties an opportunity to offer additional evidence on whether and to what extent punitive damages should be assessed against the defendants. The same jury decided liability and punitive damages as to all 92 plaintiffs. The question submitted to the jury dealing with punitive damages asked the jury to determine the percentage that punitive damages should bear to compensatory damages. The liability and punitive damages issues made up the first portion of the trial[3], the Loyd 92 trial.[4]
 
 
 22
 The second portion of the trial, the Sanford trial, grouped four[5] of the 92 cases for trial on the issues of product exposure, producing cause, defendants' percentage responsibility and compensatory damages. Presumably, because the Loyd 92 jury had decided that punitive damages should not be awarded, the court did not submit an issue inquiring about punitive damages to the Sanford jury. The Sanford jury only found for one plaintiff, Wade, and awarded him $15,000 in compensatory damages.
 
 
 23
 Final take nothing judgments were entered in favor of the defendants against plaintiffs Burke, Sanford and Nichols. Final judgment was entered in favor of plaintiff-Wade against the defendants. The remaining Loyd 92 plaintiffs, whose cases have not been tried on compensatory damages, and the defendants, jointly moved the trial court to certify certain issues for interlocutory appeal pursuant to 28 U.S.C. Sec. 1292(b). The motion was granted and interlocutory appeal allowed by this court. Upon joint motion of the parties, the Sanford appeal was consolidated with the Loyd 92 interlocutory appeal.
 
 
 24
 HAVING YOUR CAKE AND EATING IT TOO: FAILURE TO OBJECT TO
 
 THE MODE OF TRIAL
 
 25
 The trial essentially had the following three phases: the liability phase, the punitive damages phase and the compensatory damages phase[6]. Plaintiffs contend that the district court did not have jurisdiction to trifurcate the causes of action in a diversity case because of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Plaintiffs did not object to the mode of trial in the lower court, however. In fact, during trial the district judge told the attorneys how he intended to conduct the trial. After clarifying something with the judge, plaintiffs' counsel told the court that this mode of trial was "fine. I think that will be the best way to do it." Now for the first time, on appeal, plaintiffs' argue that trifurcation[7] was not possible in the lower court and we should reverse. We refuse to let the plaintiffs "have their cake and eat it too.[8] " After making their choice in the lower court, they are stuck with the consequences. Error, if any, was not preserved. See D. Federico Co., Inc. v. New Bedford Redevelopment Auth., 723 F.2d 122, 130 (1st Cir.1983) (stating it "is well recognized that an objection must be made in the trial court to reserve a question for review on appeal"; consequently in D. Federico Co. any error which occurred in the method of awarding damages was not preserved because there was no objection in the lower court); Ford v. United Gas Corp., 254 F.2d 817, 818 (5th Cir.) (explaining that unless the error is plainly prejudicial, a litigant may not speculate on the verdict and then object on appeal), cert. denied, 358 U.S. 824, 79 S.Ct. 40, 3 L.Ed.2d 64 (1958).
 
 GROSS NEGLIGENCE, THEY HAD A RIGHT TO KNOW
 
 26
 Plaintiffs contend that the court should have instructed the Sanford jury[9] of the findings made by the Loyd 92 jury[10] that the defendants' products were defective and defendants were grossly negligent. During his instructions to the Sanford jury, however, the trial judge advised the jury the case had been tried in phases and "[d]uring the first phase of these cases, another jury has found that the asbestos-containing products manufactured or sold by these Defendants were defective and unreasonably dangerous to users or consumers such as the Plaintiffs." We do not agree with plaintiffs. The judge clearly told the jury of the defect and no error was committed.
 
 
 27
 We now address the gross negligence issue. In phase two of the trial, the Loyd 92 jury decided that although the defendants were grossly negligent, no punitive damages should be awarded.[11] The function of the Sanford jury was to determine the amount of compensatory damages to be awarded each plaintiff. Because the Loyd 92 jury had previously determined that no punitive damages were to be awarded, the gross negligence finding was irrelevant to the task of the Sanford jury. Gross negligence is relevant to a determination of punitive damages. See Jackson v. Taylor, 912 F.2d 795, 798 (5th Cir.1990) (explaining that under Texas law gross negligence is relevant to the issue of exemplary damages); Aluminum Co. of America v. Alm, 785 S.W.2d 137, 140 (Tex.) (instructing that gross negligence is the ground for exemplary, or punitive, damages), cert. denied, --- U.S. ----, 111 S.Ct. 135, 112 L.Ed.2d 102 (1990). Accordingly, the trial judge did not err in this respect.
 
 
 28
 The question before us is not what would happen if the same mode of trial were employed and a jury had found that punitive damages should be awarded. Consequently, we do not decide whether in this situation the gross negligence finding should be put before the jury whose task it is to determine compensatory damages in a similar trifurcated action.
 
 
 29
 EXCLUDING/ADMITTING EVIDENCE ON THE STATE OF THE ART
 
 
 
 [12]
 ISSUE
 
 
 
 30
 Plaintiffs contend that in proving the "state of the art" issue, they were relegated to using secondary evidence. Various documents were excluded from evidence which would have strengthened their case contend Plaintiffs. Furthermore, the videotape deposition of Dr. Corwin Hinshaw, defendants' expert witness, was admitted into evidence although plaintiffs' counsel was not present[13] at this particular deposition. Other plaintiffs' attorneys were present at the videotape deposition and examined Dr. Hinshaw. The deposition testimony was admitted over plaintiffs' objections.
 
 
 31
 Because plaintiffs prevailed on the state of the art issue[14], on appeal we find no error in admitting or excluding the evidence discussed above. No substantial rights of the plaintiffs were affected in admitting/excluding the evidence. See Fed.R.Civ.P. 61; Muyzka v. Remington Arms Co., Inc., 774 F.2d 1309, 1313 (5th Cir.1985). Accordingly, if there was any error committed it was harmless and not reversible.
 
 
 32
 EXCLUSION OF EVIDENCE ON THE COMPENSATORY DAMAGES ISSUE
 
 
 33
 During the compensatory damages phase of the trial, the third phase, the district judge excluded plaintiffs' exhibits which concerned the progressive nature of asbestos related diseases. The excluded documents showed the following two things: (1.) that the medical tools for diagnosing asbestos related diseases are relatively crude and (2.) that serious disease from asbestos exposure can exist before it can be clinically detected. The exhibits were developed and filed by defendants in other courts. Plaintiffs claim they were forced to prove secondarily what the defendants had previously admitted. The evidence offered during the third phase of the trial consisted of the live testimony of one physician and the deposition testimony of three other physicians. These experts testified on the topics contained in the exhibits which plaintiffs sought to offer. The information was put before the jury in this form rather than through the excluded exhibits. The only item excluded from the jury at this phase of the trial was the fact that six of the nine defendants had filed documents in other cases which indicated they were aware of the facts the plaintiffs sought to prove at this trial.
 
 
 34
 At this stage of the trial, the issues before the jury concerned the question of compensatory damages. Consequently, the fact that defendants had filed documents in other litigation which showed they may have been aware of relevant facts on the issue of compensatory damages was not important at this stage of the trial. What was important, however, was the material contained within these excluded documents. Because the material was placed before the jury in the form of plaintiffs' expert witnesses, the additional excluded exhibits were merely cumulative. Looking at the record as a whole, we do not agree that the judge abused his discretion. But even assuming for the purposes of argument that error was committed, any error which may have occurred was harmless. The exclusion of cumulative testimony is harmless. See Collins v. Wayne Corp., 621 F.2d 777, 781-83 (5th Cir.1980); see also Koonce v. Quaker Safety Prods. & Mfg., 798 F.2d 700, 719-20 (5th Cir.1986) (explaining that because the substantial rights of the complaining party were not affected under Fed.R.Civ.P. 61, reversal was not required).
 
 EXCLUSION/ADMISSION--EXHIBITS 76 AND 2600-2604
 
 35
 During closing arguments of the punitive damages phase[15] of the trial, the district judge allowed into evidence defendants' exhibit 76. This exhibit contained the amount of compensatory damages sought by each of the 92 plaintiffs. Plaintiffs object to the submission of this evidence claiming it was irrelevant and prejudicial under Fed.R.Evid. 403. Defendants used this exhibit to argue that over $2.8 million dollars in compensatory damages was enough to get their attention and any award of punitive damages is unnecessary. Plaintiffs contend because their exhibits 2600-2604 were not admitted into evidence during this stage of the trial to counter exhibit 76, reversible error was committed. We disagree.
 
 
 36
 The trial judge has broad discretion in the admission or exclusion of evidence. See Peteet v. Dow Chem. Co., 868 F.2d 1428, 1431 (5th Cir.), cert. denied sub nom., Dow Chem. Co. v. Greenhill, --- U.S. ----, 110 S.Ct. 328, 107 L.Ed.2d 318 (1989); The assertion made by plaintiffs in their pleadings constituted judicial admissions. See White v. Arco/Polymers, Inc., 720 F.2d 1391, 1396 (5th Cir.1983). In the manner the exhibit was used by defendants we cannot say the trial judge abused his discretion in admitting the exhibit. The exhibit was only once referred to during this phase of the trial. The jury has a right to know what a party seeks in his complaint if the information is relevant. See Frank v. Bloom, 634 F.2d 1245, 1251 (10th Cir.1980) (stating "[t]he factual matter contained in the pleadings is admissible as an admission by a party made by his agent acting within the scope of his employment"); Continental Ins. Co. of N.Y. v. Sherman, 439 F.2d 1294, 1298 (5th Cir.1971) (assuming relevancy, pleadings in the same action are generally admissible). Accordingly, no error occurred in the admission of exhibit 76.
 
 
 37
 Exhibits 2600-2604 were excerpts from financial statements of five of the defendants that were filed with the Securities and Exchange Commission. These exhibits contained information on the wealth of the companies and their ability to deal with the asbestos litigation. One financial statement set forth that in the opinion of management, the asbestos claims would "not have a materially adverse effect on the Company's financial position." The jury was instructed they could award any percentage of compensatory damages as punitive damages. During the punitive damages phase, not one defendant argued that an award of punitive damages would bankrupt that defendant.
 
 
 38
 Furthermore, plaintiffs argue they should have been allowed to admit this evidence in response to defendants' exhibit 76. Assuming arguendo that error occurred in admitting the exhibit and excluding the others, the error was harmless. The discussion involving defendants' exhibit 76 took up less than 3 of 172 pages of the punitive damages phase closing argument. The exhibit was hardly used at trial and little attention was focused upon it. The judge instructed the jury on the law of punitive damages accordingly and they were free to do as they wished. After looking at the vast amounts of evidence admitted before the Loyd jury during the liability and punitive damages phases of the trial, we conclude if any error occurred it was harmless. See Fed.R.Civ.P. 61.
 
 THE INFAMOUS LETTER
 
 39
 During the course of the compensatory damages phase of the trial, a letter was introduced into evidence. The letter authored by Mr. Madeksho, one of the plaintiffs' attorneys in this case, was sent to Mr. Dartez, an asbestos plaintiff who previously has been before this court. See Dartez v. Owens-Illinois, et al., 910 F.2d 1291 (5th Cir.1990); Dartez v. Fibreboard Corp., 765 F.2d 456 (5th Cir.1985). Nevertheless, Mr. Dartez is not a plaintiff in this action and has absolutely nothing to do with this case except for the fact that he and several of these plaintiffs have the same attorney. The letter sent to Mr. Dartez advised him to see Attorney-Madeksho prior to visiting a physician so that the two "may go over what needs to be related to the doctor." Dartez was also instructed not to fill in the doctor's questionnaire or have his conversation with the doctor recorded. Finally, the letter stated: "DO NOT SHOW THIS LETTER TO DEFENSE DOCTOR OR MEMBERS OF HIS STAFF."
 
 
 40
 While the letter does not put Attorney-Madeksho in the best light, it was error and an abuse of discretion to admit the letter at any phase of the trial. Try as they may in their brief to contend the letter is relevant, the truth of the matter is the letter was brought out at trial solely to portray plaintiffs' counsel, specifically Madeksho, as a villain. Dartez is not a party to this litigation. The letter dealt solely with what Dartez was to do regarding a medical exam. Error was committed in the admission of this letter.
 
 
 41
 Shortly after admission of the infamous letter the judge instructed the jury that the exhibit was withdrawn and they were to disregard the letter and "give no further consideration to it." The trial judge's instruction to the jury cured any error which may have occurred from introduction of the letter. See Mouton v. Tug "Ironworker", 811 F.2d 946, 948 (5th Cir.1987) ("the trial courts instruction to disregard the objectionable matter was sufficient to cure any error"); Riddle v. Exxon Transp. Co., 563 F.2d 1103, 1108-09 (4th Cir.1977) (involving an analogous situation in which the court concluded that a cautionary instruction will generally cure any error resulting from the erroneous introduction of evidence; especially when the error is not dwelled[16] upon).
 
 THE TEAGUE REPORT
 
 42
 Dr. Wilson is the testifying expert for defendants in asbestos cases. Dr. Teague is his partner. Mr. Sanford went for an examination to be performed by Dr. Wilson. Dr. Wilson was busy, however, and Dr. Teague performed the examination. Dr. Teague's examination, recorded in a medical report, revealed asbestosis in Mr. Sanford. A later examination of Mr. Sanford by Dr. Wilson found no evidence of asbestosis, however. Plaintiffs argue that reversible error occurred when the Teague report was not admitted into evidence. They contend the report was an admission of a duly authorized agent under Fed.R.Evid. 801(d)(2)[17] and therefore admissible.
 
 
 43
 Under Texas law an agent is authorized to act for and on behalf of the principal and is subject to the principal's control. Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc., 630 F.2d 250, 269 (5th Cir.1980). It is highly doubtful, not impossible, that a physician[18] would be subject to the control of nine asbestos manufacturers. Furthermore, the burden of proving the agency relationship was on the plaintiffs, Buchoz v. Klein, 143 Tex. 284, 286, 184 S.W.2d 271 (1945), and they did not meet their burden. No evidence was introduced by the plaintiffs at trial to establish an agency relationship between the defendants and Dr. Teague. Accordingly, the district court was correct to exclude the hearsay report, and this point of error is overruled.
 
 IN CONCLUSION
 
 44
 We now end by stating that for the above reasons the judgment of the district court is in all respects
 
 
 45
 AFFIRMED.
 
 
 
 [1]
 District Judge of the Southern District of Texas, sitting by designation
 
 
 [2]
 Issues were also certified for interlocutory appeal pursuant to 28 U.S.C. Sec. 1292(b). The opinion addresses and answers the certified issues as well
 
 
 [3]
 The jury found against the defendants on the liability issue but failed to find that punitive damages were warranted
 
 
 [4]
 In other words, liability and punitive damages were decided as to all 92 plaintiffs
 
 
 [5]
 These four cases, along with the interlocutory certification, are the subject of this appeal
 
 
 [6]
 The Loyd jury decided liability and punitive damages while the Sanford jury decided the compensatory damages for four of the plaintiffs
 
 
 [7]
 We add, although do not decide its correctness, that the method followed by the lower court is not wholly without support. Rosales v. Honda Motor Co., Ltd., 726 F.2d 259, 260 (5th Cir.1984), approved a bifurcated trial on the issues of liability and damages, despite the Texas policy "that in personal injury cases the issues are so intertwined that such bifurcated trials are impermissible. Consequently, a trifurcation may be ordered in federal court even if disallowed in state court as long as substantive state law is not impinged. The mode of the trial appears procedural under Fed.R.Civ.P. 42(b) and the teachings of Hanna v. Plumer, 380 U.S. 460, 473-74, 85 S.Ct. 1136, 1145, 14 L.Ed.2d 8 (1965). Furthermore, Jenkins v. Raymark Ind., Inc., 782 F.2d 468, 474-75 (5th Cir.1986), approved bifurcation of punitive and compensatory damages. This seems to add further support to the lower court's mode of conducting this trial
 
 
 [8]
 We think it interesting that plaintiffs were more than happy to try the case in the method proposed by the court until the jury had returned a zero percentage multiplier for punitive damages. Plaintiffs' counsel, at oral argument, even acknowledged that he did not object to the mode of trial in the lower court. Furthermore, the district court had both subject matter and in personam jurisdiction to try this case. Consequently, plaintiffs' argument that the court lacked jurisdiction to try the case in the manner which it did is misplaced
 
 
 [9]
 The "Sanford jury" was the jury that determined compensatory damages for four of the plaintiffs
 
 
 [10]
 The "Loyd 92" jury determined liability and punitive damages
 
 
 [11]
 This is so because the jury answered zero to the question inquiring of the percentage of compensatory damages to be assessed against each defendant as punitive damages
 
 
 [12]
 "State of the art" as used in asbestos litigation refers to the issue of when the dangers of asbestos containing products were known or knowable to the manufacturers of asbestos
 
 
 [13]
 Plaintiffs' counsel had examined Dr. Hinshaw on two prior occasions, however. This is undisputed by plaintiffs
 
 
 [14]
 The state of the art issue relates to liability. Plaintiffs even conceded in their brief that they prevailed on the state of the art issue
 
 
 [15]
 Plaintiffs offered no evidence prior to closing argument in this phase; the defendants offered some evidence, however
 
 
 [16]
 After the incident, the letter was not mentioned again by either side during the trial. Furthermore, the fact the letter took up a small portion of a long and complex trial lends support to our conclusion of the harmlessness of the letter
 
 
 [17]
 Fed.R.Evid. 801(d)(2)(D) provides a statement is not hearsay if "[t]he statement is offered against a party and is ... a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."
 
 
 [18]
 If anything, Dr. Teague was possibly an independent contractor. An independent contractor undertakes to do a specific piece of work for another using his own means and methods without submitting himself to the control of the other with respect to all details. Sherard v. Smith, 778 S.W.2d 546, 548-49 (Tex.App.--Corpus Christi 1989, writ denied). Since Dr. Teague was presumably under no control of the defendants, he was an independent contractor under the "right of control" test used in Texas to identify an agency relationship. Id