**ILLINOIS TERMINAL R. CO.**

v.

**FRIEDMAN.**

No. 14817.

United States Court of Appeals
Eighth Circuit.

Nov. 30, 1953.

Supplemental Opinion Dec. 21, 1953.

Rehearing Denied Feb. 17, 1954.

See 210 F.2d 229.

Robert C. Ely, St. Louis, Mo. (Wayne Ely, Jos. L. Badaracco, and Ely & Ely, St. Louis, Mo., were on the brief), for appellant.

Everett Hullverson, St. Louis, Mo. (Orville Richardson and Kramer & Chused, St. Louis, Mo., were with him on the brief), for appellee.

Before SANBORN, THOMAS, and JOHNSEN, Circuit Judges.

PER CURIAM.

This is an appeal from a judgment for the plaintiff (appellee) in a personal injury action tried to a jury. Two questions were presented to this Court for review: (1) whether the defendant was entitled to a directed verdict on the ground that the plaintiff was guilty of contributory negligence as a matter of law; and (2) whether the District Court committed prejudicial error in admitting certain evidence at the trial.

We find nothing in the record which shows that the District Court had jurisdiction of this case. Diversity of citizenship was not pleaded or proved. Conceivably, if it had been proved, although it was not alleged in the complaint, we could have treated the complaint as amended to conform to the proof. While the plaintiff testified that she resided in Missouri, there was no evidence as to her citizenship or that of the defendant. Since the District Court did not question its jurisdiction, but tried the case on the merits, and since the defendant did not challenge the jurisdiction of that court and has invoked our jurisdiction by taking this appeal, it is reasonable to suppose that diversity of citizenship did in fact exist.

A federal appellate court, in a case under review, must satisfy itself not only of its own jurisdiction but also of that of the District Court. Mitchell v. Maurer, 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338. One who invokes the jurisdiction of a federal district court must allege in his pleading the facts essential to show jurisdiction. McNutt v.

General Motors Acceptance Corporation, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135. We cannot be satisfied that the District Court had jurisdiction of this case, in the absence of a record affirmatively showing the existence of such jurisdiction.

Section 1653, Title 28 U.S.C.A., reads as follows:

"Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."

If diversity of citizenship did in fact exist at the time this action was brought, and if the pleadings are amended to so show, we can decide the questions presented for review. See and compare, Keene Lumber Co. v. Leventhal, 1 Cir., 165 F.2d 815–819.

Leave is granted to the parties to amend the pleadings within thirty days to show that the District Court had jurisdiction of this action. If the pleadings are so amended, we will decide the questions presented for review, without further argument. If the pleadings are not so amended, the case will be remanded with directions that it be dismissed for want of jurisdiction.

### Supplemental Opinion

SANBORN, Circuit Judge.

This is an appeal from a judgment for the plaintiff, Lillie Mae Friedman, in an action brought by her against the Illinois Terminal Railroad Company to recover for personal injuries which she sustained on March 14, 1951, at about 5:30 P.M., while driving an automobile westwardly over the defendant's McKinley Bridge, which crosses the Mississippi River from Illinois to St. Louis, Missouri.[1] She was on her way from Madison, Illinois, to St. Louis. On the westerly span of the bridge, which is on the Missouri side of the river, she lost control of the automobile, which skidded and collided with a truck coming from the opposite direction. Generally stated, the claim upon which her complaint was

based was that the accident was due to the negligent construction and maintenance by the defendant of the surface of the bridge.

The defendant denied that it was negligent in any respect, and alleged that the plaintiff was guilty of contributory negligence. The issues were tried to a jury. The defendant moved for a directed verdict in its favor at the close of the evidence. The court denied the motion. The jury returned a verdict for the plaintiff. A motion of the defendant for judgment notwithstanding the verdict or, in the alternative, for a new trial was thereafter denied, and this appeal followed.

Two questions are presented for decision: (1) whether the court erred in denying the motion of the defendant for a directed verdict made upon the ground that under the evidence the plaintiff was guilty of contributory negligence as a matter of law; (2) whether the court erred in admitting, over the defendant's objection, evidence as to the kind and quality of the surface used on the Eads Bridge, which crosses the Mississippi River at St. Louis.

The McKinley Bridge is a toll bridge which has three lanes for automobile traffic: two single outer lanes, one on each side of the main structure, and a double center or inner lane carrying traffic both ways. There are two sets of street car tracks in the inner lane. The outer lanes, which are separated from the inner lane by steel girders, are paved with black top. The inner lane is surfaced with planks or slabs made of an asphalt preparation manufactured by Carey Asphalt Company and used generally in road and bridge construction. Such planks have been continuously used to surface the McKinley Bridge since 1930. The planks run lengthwise on wood timbers. The defendant uses about three thousand of these planks a year for repairs and replacements. The McKinley Bridge carries a "tremendous" amount of traffic. The planks are

---

1. The complaint has been amended to show federal jurisdiction based on diversity of citizenship and amount in controversy.

subject to breakage. The surface of the bridge is slippery when wet and there are warning signs at each end, reading: "Slow. Drive Carefully. Slippery When Wet."

The plaintiff testified that on March 14, 1951, she had driven the automobile in suit, which was used by her husband in his business, from St. Louis to Madison, Illinois; that her married daughter was with her and they were returning to St. Louis about 5:30 in the evening; that there was the regular 5:30 traffic on the bridge; that the weather was damp and misty; that the surface of the road was slippery; that she was driving between 20 and 25 miles an hour, going west, straddling the south rail of the northerly street car tracks; that she could see several automobiles ahead of her and a truck coming; that she thought she "had better move over" to give more room; that she moved over about a foot, and, as she did so, she felt the front right wheel of the automobile fall in a hole; that it jerked the steering wheel to the right; that the car started to skid, and she tried to get it out of the skid by turning the wheel to the left, but did not succeed and kept skidding until her automobile collided with the truck coming toward her, the speed of which she estimated to be 20 or 25 miles an hour.

The plaintiff also testified that she was familiar with the condition of the bridge as to holes; that there were always holes in the bridge; that the holes were "just like you would take a plank out, and sometimes sort of beveled on the edges, around the tracks there is always holes"; that the surface of the bridge is always slippery when wet; that the hole into which the wheel of the car dropped was an inch and a half or two inches deep; that she did not see the hole and had no idea as to how long or how wide it was; that her automobile traveled 35 or 40 feet after the wheel dropped into the hole; that the automobile, its tires and equipment were in good condition; that she had driven automobiles for about thirty years and had been familiar with the roadway on the McKinley Bridge for twenty-four years; that it always had holes in various spots, "pretty good size ones"; that she nearly always took the outside lane or span, which was safer and had less holes in it; that she thought the holes in the inner lane were dangerous; that she used the inner lane on the day of the accident because there was more traffic on the outside, westbound, lane, but that she could have taken the outer lane.

■ Without going into detail, there was evidence that at or about the place where the accident happened there was about 25 or 30 feet of surface planking missing; that the depression thus caused was about an inch and a half or two inches deep and had existed for at least a month. The evidence adduced by the plaintiff was sufficient to warrant an inference by the jury that this depression in the surface of the bridge caused the accident, and that the defendant had, or was charged with, knowledge of its existence.

■ On review, the plaintiff, as the prevailing party, is of course entitled to have the evidence viewed in the light most favorable to her and to have the benefit of all reasonable inferences which can be drawn from it, viewed in that aspect. It is true that the plaintiff's evidence that she was familiar with the surface of the bridge, that the inner lane was defective and full of holes, and that she considered it dangerous and more so than the outer lane of the bridge which she ordinarily used, gave support to the contention of the defendant that the plaintiff, under her testimony, had put herself in the position of a person who knowingly chose to pursue what her evidence showed to be a dangerous course, when a safer one was available to her.

■ The burden of proving contributory negligence was on the defendant. A court will infrequently direct a verdict in favor of the party having the burden of proof. Roche v. New Hampshire National Bank, 1 Cir., 192 F.2d

203, 205. It is only when the evidence upon a controlling issue is all one way or so overwhelmingly one way as to leave no doubt what the fact is, that a trial court may direct a verdict. Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720. The question of contributory negligence as a general rule is one of fact for the jury, and especially where the facts are in dispute and the evidence is such that from it fair-minded men may draw different inferences. Washington & Georgetown Railroad Company v. McDade, 135 U.S. 554, 571–572, 10 S. Ct. 1044, 34 L.Ed. 235; Wilkerson v. McCarthy, 336 U.S. 53, 63, 69 S.Ct. 413, 93 L.Ed. 497; Wright v. Paramount-Richards Theatres, 5 Cir., 198 F.2d 303, 307–308; Westborough Country Club v. Palmer, 8 Cir., 204 F.2d 143, 150. A speed of 20 to 25 miles an hour is not ordinarily excessive, and the failure of an automobile driver to observe a depression in the surface of a bridge such as is claimed to have caused the accident in suit could not, we think, be said to amount to contributory negligence as a matter of law.

It is our opinion that under the evidence in the instant case the question of contributory negligence was a question of fact for the jury.

The District Court permitted an Assistant Dean of Students at Washington University to testify, over the objection of the defendant, that the Eads Bridge had a concrete surface and that he had noticed no tendency of his automobile to skid on that type of material. The defendant contends that the admission of this evidence was prejudicial error. The question of the admissibility of evidence as to what others do that a defendant in a personal injury case has or has not done, is not free from doubt. There are authorities both ways on the subject. See and compare, Brigham Young University v. Lillywhite, 10 Cir., 118 F.2d 836, 840–841, 137 A.L.R. 598, and Annotation in 137 A.L.R. at 611; Doucette v. Vincent, 1 Cir., 194 F.2d 834, 837; Hecht Co., Inc., v. Jacobsen, 86 U.S.App.D.C. 81, 180 F.2d 13, 17;

Chicago Great Western Ry. Co. v. McDonough, 8 Cir., 161 F. 657, 663; Schermer v. McMahon, 108 Mo.App. 36, 82 S. W. 535; Asbury v. Fidelity National Bank & Trust Co., 231 Mo.App. 437, 442–443, 100 S.W.2d 946, 949.

We think that the evidence as to the surface of the Eads Bridge, standing alone, had no tendency to establish a standard, custom or practice among bridge builders not to use planks or slabs of asphalted material as surfacing, or to establish that the use of such planks by the defendant for the surfacing of its bridge was negligence. But, assuming that it was error to admit this evidence, we are satisfied that there is no justification for a ruling by this Court that the error was prejudicial. The evidence of the defendant that material such as it used in surfacing its bridge was in general use minimized, if it did not completely offset, any prejudicial effect the admission of the evidence relative to the surface of the Eads Bridge might have had.

The issue of the alleged negligent construction of the surface of the McKinley Bridge was not submitted to the jury. The theory upon which the case was submitted is shown by the following excerpts from the court's charge:

"You are instructed that if you find from the evidence that on the day and occasion mentioned in the evidence Mrs. Friedman was driving her automobile in a westwardly direction on the defendant's bridge between Missouri and Illinois, and that she was on the Missouri side of the bridge at the time of the occurrence mentioned in evidence, and that the traveled surface of the bridge was wet and slippery, and that there were holes and rough places in the traveled portion of said bridge, and that by reason of such conditions existing at that time, if you so find, the bridge was not reasonably safe for vehicles traveling thereon; and, if you find from the evidence that such condition with reference to the holes in the trav-

eled portion of the said bridge had existed for a sufficient length of time before plaintiff's injury that the defendant railroad, by the exercise of ordinary care, could have discovered such condition, and had a reasonable time thereafter, by the exercise of ordinary care, to have corrected such condition before plaintiff was injured, and that the defendant Illinois Terminal Railroad Company negligently failed so to do, and that as a direct result of such negligence, one of the wheels of the automobile driven by Mrs. Friedman struck one of such holes causing the automobile to skid and go out of control and to cross to the other side of the bridge and come in contact with the truck mentioned in evidence, then it will be your duty to find in favor of the plaintiff, and your verdict should be in favor of Mrs. Friedman."

Since the evidence of which the defendant complains obviously had no bearing upon any issue submitted by the court to the jury for its determination, we fail to see how the admission of the evidence could be considered prejudicial.

The rule of this Court for many years has been that unless an appellant can show from the entire record the denial of some substantial right there will be no reversal. Valley Shoe Corporation v. Stout, 8 Cir., 98 F.2d 514, 520 and cases cited.

Rule 61 of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

While this rule is directed to the district courts, it should also be heeded by the federal appellate courts, Gillis v. Keystone Mut. Casualty Co., 6 Cir., 172 F.2d 826, 830, 11 A.L.R.2d 455, and no trial court should be held to be in error for following it.

The judgment appealed from is affirmed.