# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1402

_____

| | | |
|---|---|---|
| Randy Pullman; Leona Pullman; Jennifer Pullman, | * | |
| | * | |
| Plaintiffs-Appellees, | * | |
| | * | |
| v. | * | |
| | * | |
| Land O'Lakes, Inc., | * | |
| | * | |
| Defendant Third Party Plaintiff-Appellant, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of South Dakota |
| | * | |
| Merle Van Liere; EN-R-G-MAX, Inc., C-F-S, Inc., doing business as Colton Feed Service, Inc., | * | |
| | * | |
| Third Party Defendants. | * | |

_____

Submitted:  December 11, 2000

Filed: August 20, 2001

_____

Before McMILLIAN and JOHN R. GIBSON, Circuit Judges, and LAUGHREY,[1] District, Judge.

_____

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri, sitting by designation.

McMILLIAN, Circuit Judge.

Land O'Lakes, Inc., appeals from a final judgment entered in the United States District Court[2] for the District of South Dakota on a jury verdict in the amount of $174,825.52 in favor of Randy and Leona Pullman and their daughter, Jennifer Pullman (appellees). For reversal, appellant argues that the district court erred in (1) failing to declare a mistrial, (2) admitting certain evidence, (3) giving certain jury instructions, and (4) granting prejudgment interest. For the reasons discussed below, we affirm the judgment of the district court.

The district court had jurisdiction pursuant to 28 U.S.C. § 1332 (diversity of citizenship); appellees are residents of South Dakota; appellant is a Minnesota cooperative; this court has jurisdiction pursuant to 28 U.S.C. § 1291.

I.

Appellees are dairy farmers in eastern South Dakota. They have been in the dairy business since 1969. In the fall of 1994 they entered into an agreement with appellant for dairy consulting services. Appellant had its employee, Dr. Jeff Dietrich, a veterinarian, work with appellees in preparing dairy cow feed rations. At this time appellees had about 200 cows, but, because they were building a new barn, the cows were kept outside or crowded in an old barn that caused cattle stress. Because the cows were not eating enough, they developed health problems. To correct this problem, Dr. Dietrich modified the cattle feed, adding whole cotton seed to the cow

[2]The Honorable John B. Jones, Senior United States District Judge for the District of South Dakota.

feed rations for energy and fibre; however, appellees discontinued its use because of the cost, but at Dr. Dietrich's suggestion, they tried other modifications.

On June 29, 1995, Dr. Dietrich added steam flaked soybeans to the cow feed rations to create a more nutrient-dense ration that appellees began feeding to the cows. Appellees also began to feed the cows haylage from a new bag silo; this feed was moldy and not very appealing to the cows. In addition, the temperature was over 100° F. Appellees testified that many of the cows stopped eating, became ill, or died. The cows that survived developed significant health problems.

In late July 1995, appellees hired William Foley, a feed sales representative of Mix-Rite in Sioux Center, Iowa, to take over the cow feed rations. In July 1996, Foley attempted to recreate what happened to appellees' cows and conducted a feed ration test at Dordt College using ten cows. He fed the cows various rations in an attempt to duplicate the conditions at appellees' farm.

In 1997, appellees sued appellant alleging that the nutrient program recommended by Dr. Dietrich was improper and caused 240 cows to become ill or die. Appellees' theory of liability was that the steam flaked soybeans resulted in a toxic amount of soluble protein. They based their cause of action on negligence and breach of express warranty.

In answer to special interrogatories, the jury found in appellees' favor on the negligence claim, but also found that they were contributorily negligent, but that their negligence was slight or less than slight in comparison to appellant's negligence. The jury awarded appellees damages in the amount of $174,825.52. The jury also found that appellant breached its express warranty, but, because appellees had misused the nutrition program, it found in appellant's favor on the breach of express warranty claim. Both sides filed post-trial motions.

The district court denied appellant's motion for a new trial, holding that: (1) the testimony about insurance was isolated, (2) the Dordt College study was admissible as an experimental test, and (3) that the damages instruction correctly set forth South Dakota law limiting evidence of loss of profits from milk production and calf production to the time period beginning at the time of the loss until the herd was replaced and excluding any recovery for loss of profits following purchase of the replacement herd. The district court also granted appellees prejudgment interest at the statutory rate of 10% from October 1, 1996, a date after the purchase of the replacement herd, through October 1, 1999, the date of the jury verdict. Thereafter, the district court amended its judgment and this appeal followed.

## II.

Prior to trial the district court had granted appellant's motion in limine regarding the issue of insurance coverage. At trial, Randy Pullman testified about a conversation that he had with Gary Holland, a local cooperative representative, in which Holland told him that "we have insurance for it," and that "we will take care of it," but that the local office "had no authority over a thousand dollars." Appellant objected and moved for a mistrial. The district court denied the mistrial motion and subsequently denied its new trial motion. To put it into context, we set out the question and the answer:

> Question: Did you have any conversation with Mr. Holland or anyone about the beans?
>
> Randy Pullman: Yeah. Like I said, we called and it was almost quitting time, it was almost 6:00. And I called out there. And Bob was out there delivering some feed - I don't remember exactly what he brought - but I told Gary Holland that he better get out here, we have a problem with these beans. Like I said, he came out. And Bill redid the test for him. And he says, I mean, if the beans are raw, we have insurance for it and we will take care of it.

Appellant contends that the district court abused its discretion in denying its motion for new trial because Randy Pullman's testimony violated the district court's order granting its motion in limine regarding the mention of insurance and therefore denied it a fair trial. The decision to grant a new trial is left to the sound discretion of the trial court and this court will not disturb the trial court's decision absent a clear showing of abuse of discretion. See, e.g., White v. Pence, 961 F.2d 776, 780 (8th Cir. 1992); Kjerstad v. Ravellette Publications, Inc., 517 N.W.2d 419, 426 (S.D. 1994) (Kjerstad).

In order for a violation of an order granting an in limine motion to serve as a basis for a new trial, the order must be specific in its prohibition and the violation must be clear. See, e.g., Mouton v. Tug "Ironworker," 811 F.2d 946, 948 (5th Cir. 1987) (holding no abuse of discretion to deny mistrial for direct violation of motion in limine where prompt instruction to disregard given). Further, a new trial may follow only where the violation has prejudiced the parties or denied them a fair trial. See, e.g., Blevins v. Cessna Aircraft Co., 728 F.2d 1576, 1579 (10th Cir. 1984) (holding any error committed in permitting, over objection, evidence concerning "crashworthiness" of aircraft, in violation of motion in limine, was harmless in light of failure to show how party was prejudiced). Prejudicial error is error which in all probability produced some effect on the jury's verdict and is harmful to the substantial rights of the party assigning it. Fed. R. Civ. P. 61; see, e.g., Illinois Terminal R.R. v. Friedman, 208 F.2d 675, 680 (8th Cir. 1954). The district court acknowledged in its post-trial memorandum opinion that its in limine order was clear that no mention of insurance was to be made during the trial. Mem. op. at 5. The district court also acknowledged that Randy Pullman clearly violated the in limine order. Id. Nonetheless, the district court concluded that Randy Pullman's testimony about insurance was made in the context of a conversation and was not specifically a response to a question from appellees' counsel about insurance. Id.

We agree with the district court that appellant was not prejudiced or denied a fair trial by the single mention of insurance. First, the testimony did not relate to any claim that was submitted to the jury. Randy Pullman testified that "(Holland) said, I mean, if the beans are raw, we have insurance for it and we will take care of it." The inference to be drawn from this testimony was that any damage caused by supplying raw beans would be covered by insurance. The issue of whether raw soybeans caused appellees' damage was never submitted to the jury, because at the close of appellees' evidence, the district court dismissed count II of appellees' complaint that alleged appellant failed to test and inspect the soybeans. The only claims submitted to the jury were negligence in recommending the nutrition program, negligence in providing consulting services, breach of express warranty on the nutrition program, and breach of express warranty on the consulting service. Randy Pullman's testimony about insurance did not relate to any claim that was actually submitted to the jury and, therefore, did not affect the jury's verdict. Cf. Kostelec v. State Farm Fire & Casualty Co., 64 F.3d 1220, 1229 (8th Cir. 1995) (holding no abuse of discretion in ruling on evidentiary matters concerning motion in limine, especially when none of the testimony allegedly damaging to party was ever admitted into evidence). Secondly, Randy Pullman never stated or inferred that appellant was covered by an insurance policy. Randy Pullman testified as to his recollection of a conversation he had had with Holland. Holland was never identified at the trial as a representative or agent of appellant. Holland testified that he was the Branch Manager of the Montrose location of the Cenex Service Center. He was not an employee of appellant. Cenex Service Center was one of several co-ops that collectively owned appellant, but the Montrose location was not a defendant in the lawsuit. Finally, insurance was only mentioned once and Randy Pullman's testimony was part of his overall recollection of the conversation with Holland. We agree with the district court that the issue of insurance coverage was not highlighted for the jury and there was no further mention of insurance after the district court admonished appellees' counsel and Randy Pullman to refrain from mentioning insurance coverage for the remainder of the trial. Consequently, we hold that the district court did not abuse its discretion in denying the motion for mistrial.

III.

Appellant next contends that the district court improperly allowed the admission of evidence regarding the cow ration study performed at Dordt College. We note that appellant was aware of this study months prior to the trial; however, it never moved to exclude evidence of the study pursuant to Daubert v. Merrell-Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) (Daubert), and Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), until shortly before the trial began. The district court concluded that the Dordt College study was admissible as an experimental test commissioned by appellees to recreate the feeding conditions in the summer of 1995 when the cows became sick and eventually died. Mem. op. at 6. Appellees and Foley contacted Dr. King Hickman, DVM, of the Shelton Vet Clinic, and Dr. Kenneth V. Nordlund, DVM, from the University of Wisconsin, to develop a study that would recreate the situation that occurred at appellees' farm in 1995. The goal of the experiment was to determine whether appellees' cows would have the same reaction to the same feed in a neutral location where other variables or possibilities could be controlled.

In July 1996, appellees sent ten cows to the Dordt College Dairy Farm. After a short acclimation period, the cows were put on the same rations that appellees' herd was fed in the summer of 1995 by Dr. Dietrich. The cows were fed this ration for about a month by the Dordt College staff. The cows were monitored during this period by the Dordt College staff and Foley. At the end of the test, the cows were returned to appellees. Over the objections of appellant, Foley and Randy and Leona Pullman testified about the Dordt College study, the purpose of the study, and what each of them observed. All testimony amounting to an opinion or conclusion was prohibited. Appellees argued prior to trial and at trial that the Dordt College study was more in the nature of an experimental test which is subject to the admissibility requirements in McKnight v. Johnson Controls, Inc., 36 F.3d 1396, 1401 (8th Cir. 1994) (McKnight). The district court concluded that the Dordt College study did not contain much, if any,

information subject to the standards for the admissibility of expert testimony set forth in <u>Daubert</u>. Mem. op. at 6.

In reviewing the district court's denial of a motion for a new trial on the issue of admissibility of the Dordt College study as an experimental test, this court applies a deferential standard of review. <u>McKnight</u>, 36 F.3d at 1400. The district court's decision will not be reversed by a court of appeals in the absence of a clear abuse of discretion. The key question is whether a new trial should have been granted to avoid a miscarriage of justice. <u>Id.</u> The foundational requirements for the admission of evidence of experimental tests are very well settled in this circuit. The trial court may properly admit experimental test evidence "if the tests were conducted under conditions substantially similar to the actual conditions. Admissibility, however, does not depend on perfect identity between actual and experimental conditions." <u>Id.</u> at 1401. <u>McKnight</u> does not require as a condition for admissibility of experimental tests that an expert conduct the tests, observe a test or explain a test. Here, we agree with the district court that the Dordt College study was an experimental test. The Dordt College study used the same type of cow and the same rations and observed the result. The relevant conditions of the test were, in fact, substantially similar to the conditions at issue in the lawsuit: (1) the cows were all the same breed (six came from appellees' farm, two were purchased, none had previously eaten appellant's ration); (2) the feed ration formula was the same formula that appellant had prescribed in 1995; (3) the actual forage that was used in the ration fed at Dordt College came from appellees' farm and was the same forage used in 1995; (4) the corn fed in the ration at Dordt College was obtained from the Montrose Cenex just as it was in appellant's ration; (5) the ration was prepared and the feed was mixed using a substantially similar procedure as that employed at appellees' farm; and (6) the Dordt College study was done in July 1996, the same month that appellees saw the major problem with their herd in 1995.

Appellees' witnesses did not testify as experts. Randy Pullman testified as to his observations regarding the Dordt College study. Randy Pullman testified about the feed that was used in the study, who set up the study, the cows that were used, and his observations of the cows after the study. At no time did he give any conclusions or opinions relating to the study. Likewise, Leona Pullman testified as to her observations as to the cows' physical appearance before they were sent to Dordt College and their appearance upon their return to appellees' farm. At no time, however, did she ever offer any conclusions or opinions. Foley's testimony regarding the Dordt College study was limited to what the test was, how appellees implemented it, what he observed during the test, and his observation of the cows' appearance before, during and after the test. He did not give any opinion testimony nor did he testify as to what, if any, conclusions could be drawn from the study. Like Randy and Leona Pullman, Foley merely stated his observations.

We hold that the district court did not abuse its discretion in admitting the Dordt College study into evidence as an experimental test. We also hold that the district court did not err in not applying <u>Daubert</u> to the issue of the admissibility of the Dordt College study because no expert testified about the study.

IV.

Appellant next contends that the district court erred in giving the damages instruction because appellees failed to have an agricultural economics expert testify at trial. This position is contrary to South Dakota law. <u>See</u> <u>Olson v. Aldren</u>, 84 S.D. 292, 300, 170 N.W.2d 891, 895 (1969). The court pointed out that the claim for damages for lost profits must not be "speculative, contingent, or uncertain  and there must be reasonable proof of the amount thereof. Any reasonable method of estimating a prospective profit is acceptable. Absolute certainty is not required." <u>Id.</u> at 299, 170 N.W.2d at 895 (citation omitted). The court noted that the plaintiff in that case

as an experienced dairy [farmer] may have been qualified to testify on estimated production and estimated expense of the dairy cows he was forced to sell, so that on a per day, week, or month basis, he could estimate with reasonable certainty the loss of profit from milk production on the cows sold.

Id. at 300, 170 N.W.2d at 895.

Here, Leona Pullman testified as to the damages appellees had suffered. Leona Pullman had been in the dairy business for over 25 years and during that time had kept appellees' dairy books. She kept detailed records on each animal owned by appellees. She kept records that indicated each cow's average daily milk production. She maintained the check stubs from the milk checks the dairy had received, allowing her to calculate the average price for milk sold over certain periods of time. She also kept track of all of the dairy's feed bills, which allowed her to calculate the average amount of money spent on feed during any given time frame. With all this written information at her disposal, Leona Pullman calculated the dairy's loss of profits from milk production and prepared Exhibit No. 75. We hold that the district court did not err in giving the damages instruction because no agricultural economics expert testimony was required under South Dakota law and Leona Pullman's testimony regarding damages was sufficient to support the submission of the claim for damages for lost profits.

V.

Appellant next contends that the damages instructions improperly permitted double recovery and omitted certain market factors. We disagree and conclude that the jury instructions, as a whole, properly instructed the jury on the substantive law in this case pursuant to the laws of South Dakota. See Scamardo v. Scott County, 189 F.3d 707, 711 (8th Cir. 1999) (stating that the form and language of the jury instructions are committed to the sound discretion of the district court so long as the jury is correctly

instructed on the substantive law in the case). South Dakota law holds that a dairy farmer's recovery is not limited to solely the value of the damaged animal. See Olson v. Aldren, 84 S.D. at 298-99, 170 N.W.2d at 894-95; see also Mash v. Cutler, 488 N.W.2d 642, 646-49 (S.D. 1992). Here, the district court limited the evidence of loss of profits from milk production and calf production to the time period beginning at the time of the loss and ending when the replacement herd was purchased by appellees and refused to allow appellees to recover any loss of profits following the purchase of the replacement herd.

VI.

Finally, we take up appellant's contention that the district court erred in awarding prejudgment interest. In this diversity case, the issue of whether the parties are entitled to prejudgment interest is governed by the law of South Dakota. Tarnavsky v. Tarnavsky, 147 F.3d 674, 679 (8th Cir. 1998). Appellees requested that prejudgment interest be awarded from October 1, 1996, to the date of the verdict, for a total of $52,447.66. In cases commencing after July 1, 1990, South Dakota law provides that:

> Any person who is entitled to recover damages . . . is entitled to recover interest thereon from the day that the loss or damage occurred, except during such time as the debtor is prevented by law, or by act of the creditor, from paying the debt. Prejudgment interest is not recoverable on future damages, punitive damages, or intangible damages . . . . If there is a question of fact as to when the loss or damage occurred, prejudgment interest shall commence on the date specified in the verdict or decision and shall run to, and include, the date of the verdict . . . . If necessary, special interrogatories shall be submitted to the jury. . . . [I]f prejudgment interest is awarded, it shall be at the Category B rate specified in § 54-3-16. The court shall compute and award the interest provided in this section and shall include such interest in the judgment in the same manner as it taxes costs.

S.D. Codified Laws § 21-1-13.1 (Michie 1968-2000).

Appellant argues that prejudgment interest is allowed only when the exact amount of damages is known or readily ascertainable and therefore maintains that appellees' damages were not known until the jury returned its verdict. It also argues that appellees waived the issue of prejudgment interest by failing to request that the district court submit a special interrogatory to the jury regarding the beginning date for prejudgment interest.

The district court correctly rejected appellant's argument regarding the uncertainty of damages because the South Dakota Supreme Court held that S.D. Codified Laws § 21-1-13.1, which applies to cases commenced after July 1, 1990, abrogated the rule that prejudgment interest cannot be obtained if damages remain uncertain until determined by the court. Mem. op. at 12, citing Fritzel v. Roy Johnson Construction, 1999 SD 59, 594 N.W.2d 336, 339 (1999) (Fritzel). Thus, prejudgment interest is now allowed from the day that the loss or the damage occurred. The district court also correctly rejected appellant's waiver argument because, although special interrogatories may be submitted to the jury, S.D. Codified Laws § 21-1-13.1 does not require that special interrogatories regarding prejudgment interest be submitted to the jury in every case. The district court found that it was not necessary in this case to submit to the jury the issue of the beginning date for the accrual of prejudgment interest. Mem. op. at 13.

We hold that the evidence showed that appellees suffered a loss due to appellant's negligence beginning in 1994 or 1995 and continuing to the date appellees purchased the replacement herd in 1996. Appellees requested prejudgment interest beginning on October 1, 1996, by which time the replacement herd had been purchased, as a "nonspeculative date from which to compute interest." Id. at 13, citing Fritzel, 594 N.W.2d at 339. Thus, we hold that the district court did not err in

awarding appellees prejudgment interest from October 1, 1996, through October 1, 1999, the date of the verdict, under South Dakota law.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.