# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1921

_____

| | | |
|---|---|---|
| Jeffrey J. Niemiec; | * | |
| Michelle Niemiec, his wife, | * | |
| | * | |
| Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Union Pacific Railroad Company, | * | |
| a Delaware Corporation; | * | |
| Burlington Northern Santa Fe | * | |
| Railway, a Delaware Corporation, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: March 15, 2006
Filed: June 7, 2006

_____

Before ARNOLD, JOHN R. GIBSON, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Jeffrey J. Niemiec, a yard engineer employed by Union Pacific ("UP"), was injured in a collision between a locomotive engine he was operating and a locomotive engine belonging to Burlington Northern and Santa Fe Railway ("BNSF"). Niemiec sued UP under the Federal Employers' Liability Act ("FELA") and sued BNSF,[1]

_____

[1]Niemiec's wife, Michelle Niemiec, joined him in his claims against BNSF.

alleging negligence and loss of consortium. The jury found in favor of Niemiec, finding BNSF 100% at fault, and awarding Niemiec $200,000 in damages for his claims against BNSF. Niemiec appeals, arguing that the district court[2] erred in giving a failure-to-mitigate instruction to the jury and also erred by failing to order a new trial based on the inadequacy of the damages award. We affirm.

## I. *Background*

A BNSF locomotive negligently collided with a UP locomotive operated by Niemiec in UP's yard in Council Bluffs, Iowa, injuring Niemiec. Niemiec began experiencing soreness in his back within a couple of hours. The next day, Niemiec sought treatment at an emergency room and told the physician that he was having back spasms. Subsequently, Niemiec began feeling pain down his right leg.

Niemiec's injuries kept him off work for approximately four months. He followed up with his own physician, Dr. Hajii, who referred him to physical therapy. Dr. Connie Lorenzo, the physician UP hired to evaluate Niemiec, also recommended physical therapy. UP provided Niemiec's physical therapy and work hardening. After Niemiec completed physical therapy and work hardening, Dr. Lorenzo authorized Niemiec to return to work with UP as a yard engineer. Niemiec worked for about three weeks and unfortunately re-injured his back. Niemiec returned to Dr. Lorenzo, complaining of pain in his lower back and pain radiating down his left leg. Dr. Lorenzo considered Niemiec temporarily disabled and referred him to a spine specialist, Dr. Eric Phillips.

Dr. Phillips performed back surgery on Niemiec eight months after the first accident. After Niemiec's surgical recovery, his doctors opined that Niemiec could never work as a locomotive engineer, a switchman, a conductor, or a hostler because

---

[2]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

-2-

train vibration poses a risk of re-injury. Niemiec could maintain his seniority with UP only in one of those positions.

In October 2002, Niemiec filed suit under FELA against UP, his employer, and against BNSF, claiming negligence in the operation of its train. At trial, testimony centered not upon fault but upon Niemiec's damages. Niemiec and BNSF offered expert testimony from economists regarding the financial impact of the accident to Niemiec. The jury returned a verdict for UP on Niemiec's FELA claim but found for Niemiec on his negligence claim against BNSF. The jury awarded Niemiec $200,000 and $1,000 to his wife for loss of consortium.

Niemiec subsequently filed a motion for a new trial, arguing that the damages awarded were insufficient and against the greater weight of evidence. He also argued that the district court erred in permitting the railroads to introduce evidence and make argument regarding apportionment of damages and mitigation of damages. The district court denied Niemiec's motion for a new trial.

## II. *Discussion*

Niemiec raises two arguments on appeal. First, he argues that the district court abused its discretion in submitting instructions on mitigation of damages to the jury. Second, he argues that the district court erred in denying his motion for a new trial based on the inadequacy of the damages award.

### A. *Mitigation of Damages Instruction*

We review a district court's instructions to the jury for an abuse of discretion. *Brown v. Sandals Resorts Int'l*, 284 F.3d 949, 953 (8th Cir. 2002). Niemiec contends for the first time on appeal that no mitigation of damages instruction should have been given at all. Niemiec argues that the district court abused its discretion because neither UP nor BNSF proved that Niemiec could have taken and held actual jobs. Niemiec

asserts that UP and BNSF misled the jury about his vocational and occupational choices following his rehabilitation. Specifically, he contends the companies argued that he could have improved his economic condition by choosing an occupation other than teaching school as an alternative to railroad jobs.

Federal Rule of Civil Procedure 51(b) requires the district court to inform the parties of its proposed jury instructions and to give the parties an opportunity to object on the record to those proposed instructions. To be timely, a party must object before the jury is instructed and before final jury arguments. *Horstmyer v. Black & Decker, Inc.*, 151 F.3d 765, 770–71 (8th Cir. 1998) (citing Fed. R. Civ. P. 51; *Commercial Prop. Inv., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 643 (8th Cir. 1995)). A party must object to the *use* or content of the jury instructions to preserve such matters for appeal. *See id*. at 771 ("Our review of the record reveals that appellants did not object to the use or content of the Special Verdict Form and objected only generally to the use of the district court's curative instruction."). The purpose of the objections are to give the district court the opportunity to correct any substantive errors in the instructions. *Id*.

A party's failure to object to jury instructions results in a waiver of that objection, absent a showing of plain error. *Id.* "'Plain error is a stringently limited standard of review,' especially in the civil context, and must result in a miscarriage of justice in order to compel reversal." *Id*. (quoting *Rush v. Smith*, 56 F.3d 918, 924 (8th Cir. 1995)). When reviewing a substantive challenge to jury instructions, we ask "whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury." *Id*. (internal quotations and citations omitted). We will only reverse when the jury instructions, viewed in their entirety, "contained an error or errors that affected the substantial rights of the parties." *Id*. (internal quotations and citations omitted).

On appeal, Niemiec argues that insufficient evidence exists in the record to support the district court's failure-to-mitigate instructions to the jury. While Niemiec contends that he made the sufficiency-of-the -evidence argument to the district court, Niemiec actually only argued to the district court about the *form* of the instructions. Niemiec urged the district court to advise the jury that he did not have to move or change crafts to comply with his duty to mitigate and that a reasonable effort to mitigate includes finding another job or being further educated to find reasonable employment. Therefore, because Niemiec never objected to the *giving* or *use* of the failure-to-mitigate instructions based on insufficient evidence, we review for plain error.

We hold that no plain error exists. The district court's instructions on the failure-to-mitigate claim mirrored Iowa law requirements, as set forth in *Vasconez v. Mills*, 651 N.W.2d 48, 54 (Iowa 2002).[3] Furthermore, BNSF offered evidence to support its failure-to-mitigate defense. First, BNSF presented evidence that Niemiec could have worked in 85% to 90% of the 10,000 jobs listed in the *Dictionary of Occupational Titles* since the fall of 2003 and chose not to work in any capacity. Second, BNSF presented evidence that Niemiec could have applied for jobs both within UP and elsewhere without further education and that he did not apply for such jobs since being medically cleared to return to work in the fall of 2003. Third, the jury heard testimony that Niemiec could have been earning $19,000 at a minimum in a job outside UP without obtaining further education and up to $40,000 as a train dispatcher with UP. Fourth, Niemiec never objected to the special verdict form, which instructed the jury to reduce the damages awarded to Niemiec for the value they assigned to his

---

[3]The defendant must introduce substantial evidence that: (1) there was something the plaintiff could have done to mitigate his loss, (2) requiring the plaintiff to do so was reasonable under the circumstances, (3) the plaintiff acted unreasonably in failing to undertake the mitigating activity, and (4) a casual connection exists between the plaintiff's failure to mitigate and the damages claimed. *Vasconez*, 651 N.W.2d at 54.

failure to mitigate his damages. Given the evidentiary record, the district court did not plainly err by instructing the jury on mitigation of damages.

### B. *Inadequacy of Damages*

Niemiec's second argument is that the district court erred in not granting a new trial because the jury's award of $200,000 in damages was inadequate. Niemiec contends that $200,000 fell well below even the lowest figure adduced by the experts for either UP or BNSF and is consequently inadequate in light of the evidence.

Iowa state law governs the question of adequacy of damages. "Although the appropriateness of a new trial is a federal procedural question decided by reference to federal law, in determining whether a state law claim damage award is excessive, state case law guides our inquiry." *Sanford v. Crittenden Mem'l Hosp.*, 141 F.3d 882, 884 (8th Cir. 1998) (internal citation omitted). We review the denial of a motion for a new trial for an abuse of discretion, giving deference to the trial judge. *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1059 (8th Cir. 2005).

As to the adequacy inquiry, Iowa law holds that "[t]he determination of damages is traditionally a jury function. A jury's assessment of damages should be disturbed 'only for the most compelling reasons.'" *Estate of Pearson v. Interstate Power & Light Co.*, 700 N.W.2d 333, 345 (Iowa 2005) (quoting *Rees v. O'Malley*, 461 N.W.2d 833, 839 (Iowa 1990))."[Iowa courts] have been reluctant to interfere with a jury verdict and give considerable deference to a trial court's decision not to grant a new trial." *Spaur v. Owens-Corning Fiberglas Corp.*, 510 N.W.2d 854, 869 (Iowa 1994). Whether a jury's award of damages is inadequate depends on the facts of each case. *Matthess v. State Farm Mut. Auto. Ins. Co.*, 521 N.W.2d 699, 702 (Iowa 1994). "Although evidence presented at trial may justify a higher damage award, this alone does not control. The key question is whether after examining the record, 'giving the jury its right to accept or reject whatever portions of the conflicting evidence it chose, the verdict effects substantial justice between the parties.'" *Foggia v. Des Moines*

*Bowl-O-Mat, Inc.*, 543 N.W.2d 889, 891 (Iowa 1996) (quoting *Kautman v. Mar-Mac Cmty. Sch. Dist.*, 255 N.W.2d 146, 148 (Iowa 1977)).

Therefore, Iowa courts will only set aside a jury award if it "(1) is flagrantly excessive or inadequate; or (2) is so out of reason as to shock the conscience or sense of justice; or (3) raises a presumption it is a result of passion, prejudice or other ulterior motive; or (4) is lacking in evidentiary support." *Estate of Pearson*, 700 N.W.2d at 345. Iowa courts "put the most emphasis on whether there is evidentiary support for the verdict."*Id.* If evidence supports the verdict,"the others will hardly arise, if it lacks support they all may arise." *Id*.

The evidentiary record in this case supports a $200,000 verdict, and that amount does not shock the conscience or appear to be the result of passion or prejudice. Here, the jury verdict form did not itemize Niemiec's past and future damages; therefore, we cannot determine how the jury categorized the damages awarded. This is not a case, as Niemiec suggests, where the evidence is uncontroverted that his damages were, at a minimum, $300,000. The jury was entitled to determine what weight, if any, to give any of the expert testimony offered by the parties. Also, the jury could have discounted or added to the assumptions made by an expert. *See Foggia*, 543 N.W.2d at 891 (stating that the jury can accept or reject any portions of the conflicting evidence it chooses).

Finally, while Niemiec argues that statements by BNSF's counsel during closing argument amounted to an "admission" that Niemiec's damages were, at a minimum, $300,000, a careful reading of the closing argument reveals that BNSF's counsel only suggested a damages award of $300,000 if the jury thought that Niemiec would lose wages in the future and could not recoup those wages through other employment opportunities. In addition, counsel went on to say that evidence in the case actually supported a damages verdict of no more than $200,000.

### III. *Conclusion*

Therefore, we hold that the district court did not abuse its discretion in denying Niemiec's motion for a new trial. Accordingly, we affirm the judgment of the district court.

_____