# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3108

_____

Betty Black,                                          *

                          Appellee,         *

                                         *   Appeal from the United States

           v.                             *   District Court for the

                                       *   District of Nebraska.

Ryan K. Shultz,                     *

                                         *

                        Appellant,       *

                                       *

Benjamin P. King,                 *

                                       *

                       Defendant,       *

                                       *

Reed, King and Shultz Law Office,   *

                                       *

                       Appellant.       *

_____

Submitted: March 26, 2008
Filed: June 24, 2008

_____

Before RILEY, JOHN R. GIBSON, and MELLOY, Circuit Judges.

_____

RILEY, Circuit Judge.

     Betty Black (Black) sued attorney Ryan K. Shultz (Shultz) and his law firm, Reed, King and Shultz Law Office, for legal malpractice and partnership liability. Black's claims arose from Shultz's failure to pursue a sexual harassment suit against

Black's employer, U.S. Bank, and from numerous misrepresentations made by Shultz during his representation of Black. A jury found Black's sexual harassment claim against U.S. Bank failed. The jury did find Black reasonably relied on Shultz's misrepresentations, awarding Black $160,000 in damages.

Shultz and his law firm (Defendants) appeal, arguing the district court[1] erred by (1) refusing to declare a mistrial when Black testified, in violation of the district court's order granting Defendants' motion in limine, that Shultz told her he had obtained $100,000 in settlement from U.S. Bank, and (2) splitting Black's legal malpractice cause of action into two separate claims by instructing the jury to consider Shultz's negligent misrepresentations separately from the merits of Black's sexual harassment suit against U.S. Bank. We affirm.

## I. BACKGROUND

Black initially hired Shultz to represent her at a hearing seeking a protection order against Black's former boss at U.S. Bank, Leland Judy (Judy). Shortly after the protection order was granted, Black hired Shultz to represent her in pursuing a sexual harassment claim against Judy and U.S. Bank.

In December 2004, Shultz wrote Black a letter discussing her demand against U.S. Bank. In the spring of 2005, Shultz told Black he had filed the proper paperwork to pursue her claim, and the proceedings were going in her favor. When Black asked for copies of documents, Shultz told her the documents were with the judge in North Platte, Nebraska.

Black told Shultz she wanted to relocate to Texas. One of Black's reasons for wanting to move was to get as far away from Judy as possible. Another reason was

[1]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

to obtain in-state tuition for her daughter at Texas A & M. Shultz advised Black not to relocate.

In May 2005, U.S. Bank closed the trust department where Black worked and offered Black a severance package. Shultz advised Black not to accept the severance package, telling her if she accepted the severance package, she would give up her right to pursue her sexual harassment suit against U.S. Bank. Acting on Shultz's advice, Black did not accept the severance package.

Black wanted to seek employment after her job at U.S. Bank ended because she was a single mother who needed to provide an income. Shultz directed Black not to look for work, telling her "[i]t would look better for the court proceedings" if her income was as low as possible. Black followed Shultz's advice.

Shultz discussed U.S. Bank's initial settlement offers with Black. Black informed Shultz U.S. Bank's initial offers were unacceptable to her. Shultz told Black her case was set for trial in June 2005. The day her case was supposedly set for trial, Shultz told Black the trial had been rescheduled for the end of June because of the judge's schedule. Throughout the summer, Shultz continued to tell Black trial dates were coming up, usually the first and last weeks of every month.

On July 22, 2005, Shultz relayed a settlement offer that Black accepted— $200,000. Shultz told Black they would receive the money in ten days. After ten days went by, Shultz told Black he had not received the money yet. Approximately a week later, when Black had still not received the money, Shultz told Black the judge was angry with U.S. Bank because the bank had not paid the settlement, and the judge would assess a 5% penalty every ten days. At one point, Shultz told Black the court had finally received $100,000 toward the settlement.

Black asked for a copy of the settlement agreement, and Shultz brought the supposed agreement to Black's home. Black told Shultz the document was unacceptable because it was not signed and notarized. Shultz then went to his car and produced another copy of the settlement that was signed by Shultz and supposedly signed by someone from U.S. Bank.

Black began to suspect something was wrong. She investigated whether her case had ever been scheduled for trial. Black found her case had not been scheduled for trial on the various dates Shultz told her. Indeed, Shultz never filed Black's lawsuit against U.S. Bank, and Shultz never had any negotiations with U.S. Bank about settling Black's case.

Black filed suit against Shultz for legal malpractice, and against Shultz's law firm for partnership liability. Before trial, Defendants filed a motion in limine, seeking to exclude any references to Shultz's evaluation of the value or worth of Black's claim against U.S. Bank. The district court granted Defendants' motion. Shortly after the trial began, Black's attorney mentioned a specific dollar figure in her opening statement. The district court granted Defendants' motion for a mistrial. A new jury was empaneled and a second trial began the following day. When the second trial was well underway, Black spontaneously testified on direct examination Shultz told her U.S. Bank had paid $100,000 to the court. Defendants again objected and moved for a mistrial. This time the district court denied the motion, instead giving a curative instruction.

At trial, Defendants admitted Shultz committed legal malpractice, which also was attributable to Reed, King & Shultz, and, as a direct result of Shultz's malpractice, Black lost the right to pursue her lawsuit against U.S. Bank. Defendants then argued they were not liable to Black because she did not establish by a preponderance of the evidence she had a viable claim for sexual harassment against U.S. Bank. The district court instructed the jury to address two separate claims: (1) whether Black established

by a preponderance of the evidence she had a viable claim for sexual harassment against U.S. Bank, and (2) whether Black sustained damages as a result of Shultz's misrepresentations.

The jury found Black established a viable sexual harassment claim against U.S. Bank and/or Judy, but Black's sexual harassment claim ultimately failed because U.S. Bank exercised reasonable care to prevent any sexually harassing behavior in the workplace and Black unreasonably failed to take advantage of the opportunities U.S. Bank provided to avoid or correct the sexually harassing behavior. The jury also found Shultz made negligent misrepresentations to Black, Black reasonably relied on Shultz's misrepresentations, and Black sustained $160,000 in damages as a result of her reasonable reliance on Shultz's misrepresentations. The district court denied Defendants' motion for judgment notwithstanding the verdict (JNOV) or for new trial and their subsequent motion to alter or amend the judgment.

## II. DISCUSSION
### A. Motion for Mistrial

Defendants argue the district court erred by refusing to declare a mistrial when Black testified in violation of the district court's order, saying Shultz told her U.S. Bank had paid $100,000 in settlement to the court. "The decision to grant a new trial is left to the sound discretion of the trial court and this court will not disturb the trial court's decision absent a clear showing of abuse of discretion." Pullman v. Land O'Lakes, Inc., 262 F.3d 759, 762 (8th Cir. 2001) (citations omitted). A violation of an order granting a motion in limine may only serve as a basis for a new trial when the order is specific in its prohibition and the violation is clear. Id. (citation omitted). Further, a party is entitled to a new trial only where the violation constitutes prejudicial error or results in the denial of a fair trial. Id. (citation omitted). "Prejudicial error is error which in all probability produced some effect on the jury's verdict and is harmful to the substantial rights of the party assigning it." Id. (citations omitted).

The parties agree the order granting Defendants' motion in limine was specific in its prohibition—the district court prohibited any reference to Shultz's evaluation of the value or worth of Black's sexual harassment claim against U.S. Bank. The parties also agree Black clearly violated the motion in limine order when the following exchange took place during her direct examination:

Q. Well, did [Shultz] talk about [U.S. Bank] having to pay any money in to court or anything?
A. Oh, yes.
Q. When did he make those comments?
A. He said that at one time that they finally received $100,000—oh, they received money for the—the settlement within the court and that that would be sent to me later.

The parties dispute whether the violation constituted prejudicial error or resulted in Defendants being denied a fair trial. Defendants generally assert Black's testimony as to specific dollar amounts "tends to suggest decision on an improper basis." Apart from that conclusory statement, Defendants set forth no basis for concluding Black's violation of the motion in limine order was harmful to their substantial rights or denied them a fair trial. Instead, Defendants seem to argue, because the district court granted a mistrial the first time its order was violated, the district court should have granted another mistrial the second time its order was violated. Because we do not know the exact nature or context of the first violation,[2] it is impossible to compare the two violations or to determine whether it was necessary or merely a cautionary measure for the district court to declare a mistrial for the first violation.

Defendants were not prejudiced or denied a fair trial by the mention of the $100,000 figure. First, the district court did not perceive the violation to be intentional, and there were no further references to specific dollar figures during the

---

[2]At the first trial, the parties agreed not to record opening statements.

trial. See Pullman, 262 F.3d at 762-63 (reasoning "appellant was not prejudiced or denied a fair trial by the single mention of insurance," in part because the issue was not highlighted for the jury and was not mentioned again after the district court admonished appellee's counsel to refrain from mentioning it).

Second, the district court gave a curative instruction. See Mouton v. Tug "Ironworker," 811 F.2d 946, 948 (5th Cir. 1987) (holding the district court did not abuse its discretion by refusing to deny a mistrial for violation of a motion in limine order where the district court gave an immediate instruction to disregard). Here, the district court instructed, in relevant part:

> It's clear from all of the evidence that no lawsuit was ever filed by Mr. Shultz, that he never had any negotiations of any kind with . . . U.S. Bank about settling this case, and from time to time, he threw out figures to Miss Black which, of course, she has lived with for quite a while, and I'm sure it's hard to get those out of her mind even though I know she understood that I had earlier ruled that those amounts were totally irrelevant, and – and they are totally irrelevant in this case.

> Whatever amounts Mr. Shultz may have mentioned during the course of his discussions with Miss Black have no basis in fact. There – there was nothing. It was simply apparently an effort on his part to calm her or to keep her from taking any further action. I don't know what the purpose was, but – so if you hear those figures or if they appear at any time during this trial, you are just totally to disregard them.

> They are not relevant to any damages that Miss Black may have sustained by reason of the claim of sexual harassment against the bank.

The district court's instruction was given immediately after the violation. It explained clearly and thoroughly why the testimony was irrelevant and why the jury was to disregard it.

Third, the district court's ruling prohibiting the mention of the false settlement offer dollar amounts was reasonable and within the court's discretion. On the other hand, another trial judge reasonably could have denied Defendants' motion in limine, finding the fictitious settlement offer amounts were relevant and not unduly prejudicial, and such a contrary ruling also may have been within the district court's broad discretion. "A district court has broad discretion when deciding whether to admit evidence, and we will not disturb an evidentiary ruling absent a clear and prejudicial abuse of that discretion." Hoselton v. Metz Baking Co., 48 F.3d 1056, 1059 (8th Cir. 1995) (internal quotations omitted). This evidentiary decision arguably was a close call.

Finally, the jury's verdict provides strong evidence the violation did not prejudice Defendants' substantial rights or deny them a fair trial. Despite hearing evidence Shultz told Black U.S. Bank had paid $100,000 towards the settlement, the jury found Shultz's sexual harassment claim failed, awarding her no damages for Shultz's failure to prosecute the claim.

Defendants fail to explain how they were prejudiced or denied a fair trial by Black's testimony, and we glean no prejudice from the record. We conclude the district court did not abuse its discretion by denying Defendants' motion for a mistrial because (1) the single mention of $100,000 was apparently inadvertent and unsolicited, (2) the district court gave a thorough and prompt curative instruction, (3) the admissibility of the evidence was reasonably debatable, and (4) the violation of the motion in limine order had no apparent effect on the jury's verdict or its calculation of damages.

## B. Jury Instructions

Defendants argue the district court improperly split Black's legal malpractice cause of action into two separate causes of action by instructing the jury to consider Shultz's negligent misrepresentations separately from the merits of Black's sexual

harassment suit against U.S. Bank. We normally review a district court's jury instructions for an abuse of discretion. See Niemiec v. Union Pacific Railroad Co., 449 F.3d 854, 857 (8th Cir. 2006) (citation omitted). However, when a party fails to object to an instruction, the objection is waived and review is for plain error. Id. at 857-58 (citation omitted). "Plain error is a stringently limited standard of review, especially in the civil context, and must result in a miscarriage of justice in order to compel reversal." Id. at 858 (quotation marks and citation omitted).

While Defendants contend they objected to the district court's giving a separate instruction on Shultz's misrepresentations, Defendants point to no such objection in the record, and we find none. The record reflects only that Defendants objected to the misrepresentation instruction because the instruction supposedly restated Black's allegations of malpractice, for which Defendants had already admitted liability. The district court apparently revised the instructions to remove the objected-to language. Because Defendants did not object to the district court's giving a separate instruction on Shultz's misrepresentations, our review is for plain error.

Defendants rely heavily on Gravel v. Schmidt, 527 N.W.2d 199 (Neb. 1995),[3] to support their argument the court erred by giving a separate instruction on Shultz's negligent misrepresentations. In Gravel, the plaintiff sued the attorney for his mother's estate for breach of contract instead of professional negligence, alleging the attorney promised the plaintiff he would inherit a sum of money that was substantially more than the sum the plaintiff actually inherited. Id. at 201. The Nebraska Supreme Court held an attorney's professional misconduct gives rise to a professional negligence action, and the plaintiff could not escape the fact that his action was one for professional negligence simply by labeling his petition a breach of contract action. Id. at 202. In reaching this conclusion, the Gravel court applied the reasoning of a line

_____

[3]In this diversity action we apply Nebraska law and attempt to anticipate how the Nebraska Supreme Court would decide the state law issues. See Farr v. Farm Bureau Ins. Co. of Nebraska, 61 F.3d 677, 679 (8th Cir. 1995).

of Nebraska Supreme Court cases holding a plaintiff could not separate a cause of action arising from a professional's alleged negligence and label it something else in order to obtain the benefit of a longer statute of limitations. Id. (citations omitted).

The reasoning in Gravel does not apply to Black's case. Black asserted only one cause of action against Shultz in her petition, labeled "Malpractice and Professional Negligence." Black's petition did not assert a separate tort claim for negligent misrepresentation, nor did she otherwise attempt to disguise or mislabel her malpractice claim. Black also was not seeking a longer statute of limitations. Further, the district court's instructions did not create a separate tort claim for negligent misrepresentation. Instead, the district court simply instructed the jury on the separate theories of causation and damages arising out of Black's single malpractice claim. Black's malpractice claim rested on two distinct sets of allegations for recovery. First, Black alleged Shultz's malpractice caused her to lose the right to pursue a viable sexual harassment suit against U.S. Bank. Second, Black alleged she reasonably relied to her detriment on, and was damaged by, Shultz's misrepresentations. These misrepresentations included Shultz advising Black not to (1) move from the area, (2) mitigate her damages by getting a job, and (3) accept the severance package offered by U.S. Bank. To assist the jury in evaluating Black's allegations, the district court presented one instruction on Black's sexual harassment claim and another instruction on Shultz's misrepresentations. Presenting Black's malpractice allegations in two separate instructions for recovery is not tantamount to creating a second, improper cause of action outside the professional negligence cause of action. Different theories for recovery are not necessarily different causes of action. Each recovery request by Black arises from the same professional relationship.

Defendants also argue, because the jury found Black had failed to prove she would have been successful in her underlying sexual harassment case against U.S. Bank, Black was not entitled to any damages against Shultz for his misrepresentations. Defendants ask us to hold that, unless a plaintiff's underlying suit is viable, an

attorney cannot be held liable for a client's damages resulting directly from the attorney's patently false and negligent legal advice or other misconduct. We decline to so hold. A plaintiff alleging attorney negligence in a civil action "must prove three elements: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) that such negligence resulted in and was the proximate cause of loss (damages) to the client." Bellino v. McGrath North Mullin & Kratz, PC LLO, 738 N.W.2d 434, 445 (Neb. 2007). "[T]he general measure of damages in a legal malpractice action is the amount of loss actually sustained by the claimant as a proximate result of the attorney's conduct." Id. at 449 (citation omitted). Proximate cause is defined as "a cause that produces a result in a natural and continuous sequence and without which the result would not have occurred." Id. (citation omitted). When the client's loss results from the attorney's failure to prosecute a claim, the client must prove (1) the claim was viable, (2) the amount of the judgment the client would have obtained but for the attorney's negligence, and (3) the amount the client would have collected. See Eno v. Watkins, 429 N.W.2d 371, 372 (Neb. 1988).

Defendants fail to recognize Black's malpractice claim did not arise exclusively from Shultz's failure to prosecute her underlying sexual harassment suit. The jury found Black's sexual harassment claim failed, and, consequently, awarded Black no damages for Shultz's failure to prosecute it. However, malpractice claims also can, and often do, involve damages proximately caused by an attorney's failure to give competent legal advice. See, e.g., Bellino, 738 N.W.2d at 449-50 (client brought malpractice suit claiming attorneys' improper legal advice proximately caused his damages). Here, the jury found, regardless of the merits of Black's underlying claim against U.S. Bank, Shultz's negligent misrepresentations proximately caused Black to suffer $160,000 in damages. Black did not need a meritorious underlying case in order for Shultz to advise Black to mitigate her damages by finding a job, nor were the merits of Black's underlying case necessarily relevant to whether Black should move out of state or should accept U.S. Bank's severance package. Shultz's legal

-11-

advice on each of these questions was negligent and damaging. Defendants cite no authority which suggests a plaintiff may recover for only those damages proximately caused by her attorney's failure to prosecute her underlying claim, where the client also suffers damages proximately resulting from her reasonable reliance on the attorney's incompetent legal advice. We therefore conclude the district court did not err, much less clearly err, in submitting separate jury instructions on Black's sexual harassment claim and Shultz's negligent misrepresentations.[4]

## III.   CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____

---

[4]Defendants further argue, because the jury instructions were incorrect, the district court should have granted their motions for JNOV and to alter or amend the judgment. Because the district court did not err in instructing the jury, it also did not err in denying Defendants' motions for JNOV and to alter or amend the judgment.